1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON

10

AT SEATTLE

11 MICROSOFT CORPORATION,

12              Plaintiff,

13        v.                                              Case No.

14 BORIS MIZHEN, MEDIA NETWORK,
   INC., NEW AGE OPT-IN, INC., I-            **COMPLAINT FOR DAMAGES AND**
15 PERMISSION, INC., DMITRI                  **EQUITABLE RELIEF**
   KOVALSKY, MUHAMMAD MOHSAN-
16 UL MOULA, ESOLUTIONS
   TECHNOLOGY, INC., DECAPTCHER,
17 JOHN DOES 1-20

18              Defendants.

19

20        Plaintiff Microsoft Corporation ("Microsoft") brings this action against Boris Mizhen,

21 Media Network, Inc. (d/b/a Media Network), New Age Opt-In, Inc., I-Permission, Inc., Dimitri

22 Kovalsky, Muhommad Mohsan-ul Moula, eSolutions Technology, Inc. (d/b/a eSolutionsTech,

23 AllBots, Inc. and JetBots), DeCaptcher (d/b/a DeCaptcher.com), and JOHN DOES 1-20

24 (collectively "Defendants").

25                              **I.  NATURE OF ACTION**

26        1.      This action stems from Defendants' "spamming" of Microsoft's Hotmail users,

27 Defendants' abuse of Microsoft's Junk E-mail Reporting Program ("JMRP") and Smart Network

28 Data Services ("SNDS"), and Defendants' other related unlawful activity that resulted in an

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

1   enormous quantity of spam e-mail messages being sent to legitimate Hotmail users.  In doing so,

2   Defendants conspired and executed a scheme to create **millions** of unauthorized Microsoft

3   Hotmail e-mail accounts that Defendants then used to sanitize their spam e-mail messages in an

4   attempt to circumvent Microsoft's Hotmail spam filters.  As a direct and proximate result of

5   Defendants' unlawful conduct, Microsoft has suffered damages, *inter alia*, damages to its

6   reputation and loss of integrity of its Hotmail services.

7       2.      This action is based upon: (1) the CAN-SPAM Act (15 U.S.C. § 7701, *et seq*); (2)

8   the Washington State Commercial Electronic Mail Act (RCW Ch. 19.190); (3) the Digital

9   Millennium Copyright Act (17 U.S.C. 1201, *et seq*); (4) the Computer Fraud and Abuse Act (18

10  U.S.C. § 1030, *et seq*); (5) the Washington Consumer Protection Act (RCW Ch. 19.86), (6)

11  fraudulent misrepresentation and concealment, (7) negligent misrepresentations, (8) common law

12  trespass to chattels, (9) common law conversion, and (10) breach of contract.  Microsoft seeks

13  injunctive relief, monetary damages, including punitive damages, liquidated damages, attorneys'

14  fees, expenses and costs, and other appropriate relief to stop and prevent Defendants from

15  "spamming" Microsoft Hotmail customers with unsolicited commercial e-mail messages.

16                          **II.  THE PARTIES**

17      3.      Microsoft is a Washington corporation duly organized and existing under the laws

18  of the State of Washington, having its headquarters and principal place of business in Redmond,

19  Washington.

20      4.      Defendant Boris Mizhen ("Mr. Mizhen") is an individual who, Microsoft is

21  informed and believes and thereupon alleges, currently resides in the State of Connecticut and

22  may be found at one or more of the following addresses: (1) 12 Fellsmere Farm Road, Branford,

23  Connecticut 06405, (2) 66 Glenbrook Road, Apartment T412, Stamford, Connecticut 06902, and

24  (3) 53 Prospect Avenue, Guilford, Connecticut 06437.  Microsoft is informed and believes and

25  thereupon alleges that at all relevant times Mr. Mizhen was and is the President, Secretary,

26  Treasurer, the Chief Executive Officer ("CEO"), and owner of Defendant Media Network, Inc.;

27  the Chief Operating Officer ("COO") of Defendant New Age Opt-In, Inc.; and the President of

28  Defendant I-Permission, Inc.  Microsoft is further informed and believes and thereupon alleges

COMPLAINT FOR DAMAGES AND                      2
EQUITABLE RELIEF

1    that Mr. Mizhen, at all relevant times, was and is an agent for Media Network, Inc., New-Age

2    Opt-In, Inc., and I-Permission, Inc., doing the things herein alleged as both an individual and

3    within the course and within the scope of such agency – including in his capacity as President,

4    Secretary, Treasurer, CEO, COO, and owner – and with the permission, consent, at the direction,

5    and on behalf of Media Network, Inc., New-Age Opt-In, Inc. and I-Permission, Inc.

6         5.      Defendant Media Network, Inc., doing business as Media Network (collectively

7    "Media Network") is a corporation that Microsoft is informed and believes and thereupon

8    alleges, is organized and existing under the laws of the State of Connecticut, and maintains its

9    principal place of business at 420 East Main Street, Building 2 Suite 8, Branford, Connecticut

10   06405.  Microsoft is informed and believes and thereupon alleges that Media Network has

11   registered and currently owns, controls, operates, and maintains website domains and storage

12   space on specialized computers or "servers" that it has and continues to use, among other things,

13   as part of its unlawful spam campaigns.  Microsoft is further informed and believes and

14   thereupon alleges that Media Network is a part of a suite of entities that Mr. Mizhen owns,

15   controls, operates, and maintains to use, among other things, as part of unlawful spam

16   campaigns.

17        6.      Defendant New Age Opt-In, Inc. ("New Age Opt-In") is a corporation that

18   Microsoft is informed and believes and thereupon alleges, is organized and existing under the

19   laws of the State of Florida, and maintains its principal place of business at 420 East Main Street,

20   Building 2 Suite 8, Branford, Connecticut 06405.  Microsoft is informed and believes and

21   thereupon alleges that New Age Opt-In has registered and currently owns, controls, operates, and

22   maintains website domains and/or storage space on specialized computers or "servers" that it has

23   and continues to use, among other things, as part of its unlawful spam campaigns.  Microsoft is

24   informed and believes and thereupon alleges that New Age Opt-In is part of a suite of entities

25   that Mr. Mizhen owns, controls, operates, and maintains to use, among other things, as part of

26   unlawful spam campaigns.

27        7.      Defendant I-Permission, Inc., doing business as I-Permission.Com, Inc. and I-

28   Permission (collectively "I-Permission"), is a corporation that Microsoft is informed and believes

COMPLAINT FOR DAMAGES AND          3
EQUITABLE RELIEF

1   and thereupon alleges, is organized and existing under the laws of the State of Connecticut, and

2   maintains its principal place of business at 127 Washington Ave., North Haven, Connecticut

3   06473-1715.  Microsoft is informed and believes and thereupon alleges that I-Permission has

4   registered and currently owns, controls, operates, and maintains website domains and/or storage

5   space on specialized computers or "servers" that it has and continues to use, among other things,

6   as part of its unlawful spam campaigns.  Microsoft further is informed and believes and

7   thereupon alleges that I-Permission is a part of suite of entities that Mr. Mizhen owns, controls,

8   operates, and maintains to use, among other things, as part of unlawful spam campaigns.

9        8.      Defendant Dmitri Kovalsky ("Mr. Kovalsky") is an individual who, Microsoft is

10   informed and believes and thereupon alleges, currently resides or otherwise may be found at one

11   or more of the following addresses: (1) 420 East Main St., Building 2 Suite 8, Branford,

12   Connecticut 06405; (2) Castillo 78 7B, Capital, C1414AWB, CF, Argentina; and (3) Bosh 39,

13   Glew, 1414 Argentina; or may otherwise be contacted by email at kovalskyd@hotmail.com,

14   dima@cp.e0.exme.net, and dima@argentina.com.  Microsoft is informed and believes and

15   thereupon alleges that at all relevant times Mr. Kovalsky was and is the Chief Technical Officer

16   ("CTO") for Defendant Media Network and employed with New Age Opt-In and I-Permission.

17   Microsoft is informed and believes and thereupon alleges that at all relevant times Mr. Kovalsky

18   was and is an agent for Media Network, New Age Opt-In, and I-Permission, doing the things

19   herein alleged within the course and scope of such agency – among other things, in his capacity

20   as CTO– and with the permission, consent, at the direction, and on behalf of Media Network,

21   New Age Opt-In, and I-Permission.

22        9.      Defendant Muhammad Mohsan-ul Moula, a.k.a. Mohsan Ranak ("Mr. Ranak") is

23   an individual who, Microsoft is informed and believes and thereupon alleges, can be contacted

24   by e-mail at ambitious.infotech@gmail.com; ambitiousit.info@yahoo.com, and at

25   ambitiousIT@live.com.  Microsoft is further informed and believes and thereupon alleges that at

26   all relevant times Defendants employed Mr. Ranak to create millions of unauthorized Hotmail e-

27   mail accounts as part of Defendants' scheme to circumvent Microsoft's Hotmail spam filters,

28   doing this and the things herein alleged within the scope of such employment with the

COMPLAINT FOR DAMAGES AND           4
EQUITABLE RELIEF

1  permission, consent, and at the direction of Defendants.

2      10.    Microsoft is informed and believes and thereupon alleges that Defendant

3  eSolutions Technology, Inc. is doing business as eSolutionsTech, AllBots, Inc. and JetBots, and

4  maintains websites at www.esolutionstech.com, www.allbots.info, and www.jetbots.com

5  (collectively "eSolutions").  Microsoft is unaware of the true name and capacity of Defendant

6  eSolutions, but is informed and believes and thereupon alleges that eSolutions can be contacted

7  through the registrants of its websites: (1) for eSolutions, Mafhh Chris at 23rd 3 F. St., Los

8  Angeles, California 95000; (2) for AllBots, Jill McGraw at Jackson Street, Suite 5, Daytona

9  Beach, Florida 33280; (3) for JetBots, Jen Wills at 95 19th Avenue Northeast, Suite 6836,

10  Seattle, Washington 98105; or can otherwise be contacted by e-mail at apnahaider@gmail.com,

11  allbots.info@gmail.com, esolutionsTech.com@gmail.com, jetbots.com@gmail.com or by

12  telephone at (206) 202-4298, (206) 666-2768, and (206) 312-1623.  Microsoft is further

13  informed and believes and thereupon alleges that at all relevant times eSolutions manufactures,

14  traffics, and offers to the public – including Defendants –  technologies, products, services,

15  devices, and components designed and produced for the purpose of circumventing technological

16  measures Microsoft uses to control access to its copyrighted works, doing this and the things

17  herein alleged within the scope of such employment with the permission, consent and at the

18  direction of Defendants.

19      11.    Microsoft is informed and believes and thereupon alleges that Defendant

20  DeCaptcher is doing business as DeCaptcher.com and maintains a website at

21  www.decaptcher.com (collectively "DeCaptcher").  Microsoft is unaware of the true name and

22  capacity of Defendant DeCaptcher, but is informed and believes and thereupon alleges that

23  Decaptcher can be contacted through the registrant of its domain, Andrey A. Polev at Krasnaya

24  217, Solnechnogorsk, Moscow, Russian Federation 141506, by phone at 7-495-3127960, and by

25  e-mail alexhalt@gmail.com and admin@decaptcher.com.  Microsoft is further informed and

26  believes and thereupon alleges that at all relevant times DeCaptcher manufactures, traffics, and

27  offers to the public – including Defendants – technologies, products, services, devices, and

28  components designed and produced for the purpose of circumventing technological measures

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

5

1   Microsoft uses to control access to its copyrighted works, doing this and the things herein alleged

2   within the scope of such employment with the permission, consent and at the direction of

3   Defendants.

4          12.     Microsoft is unaware of the true names and capacities of defendants sued herein

5   as JOHN DOES 1 - 20 ("Doe Defendants") and therefore sues these Doe Defendants by such

6   fictitious names.

7          13.     Microsoft is informed and believes and thereupon alleges that Mr. Mizhen, Media

8   Network, New-Age Opt-In, I-Permission, Mr. Kovalsky, Mr. Ranak, eSolutions, DeCaptcher,

9   and Doe Defendants, at all relevant times, have and are, *inter alia,* using false and misleading

10  messages to induce Microsoft's Hotmail users and others to visit web pages; manufacturing,

11  trafficking, and offering to the public technology, products, services, devices and components

12  designed or produced to circumvent technological measures Microsoft uses to control access to

13  its copyrighted works; and accessing Microsoft's protected computers without authorization.

14  Microsoft is further informed and believes and thereupon alleges that Mr. Mizhen, Media

15  Network, New-Age Opt-In, I-Permission, Mr. Kovalsky, Mr. Ranak, eSolutions, DeCaptcher,

16  and Doe Defendants at all relevant times have and continue to engage in the fraudulent conduct

17  alleged herein to circumvent Microsoft's Hotmail spam filters by, *inter alia*, abusing Microsoft'

18  JMRP and SNDS.  Microsoft is informed and believes and thereupon alleges that each of the

19  fictitiously named Doe Defendants is responsible in some manner for the occurrences herein

20  alleged, and that Microsoft's injuries as herein alleged were proximately caused by such Doe

21  Defendants.

22         14.     The actions alleged herein to have been undertaken by the Defendants were

23  undertaken by each Defendant individually, were actions that each Defendant caused to occur,

24  were actions that each Defendant authorized, controlled, directed, or had the ability to authorize,

25  control or direct, and/or were actions in which each Defendant assisted, participated or otherwise

26  encouraged, and are actions for which each Defendant is liable.  Each Defendant aided and

27  abetted the actions of the Defendants set forth below, in that each Defendant had knowledge of

28  those actions, provided assistance and benefited from those actions, in whole or in part.  Each of

COMPLAINT FOR DAMAGES AND                    6          Orrick Herrington & Sutcliffe LLP
EQUITABLE RELIEF                                                701 5th Avenue, Suite 5600
                                                               Seattle, Washington 98104-7097
                                                               tel+1-206-839-4300

1   the Defendants was the agent of each of the remaining Defendants, and in doing the things

2   hereinafter alleged, was acting within the course and scope of such agency and with the

3   permission and consent of the other Defendants.

### III.  JURISDICTION AND VENUE

5   15.      This is a Complaint for an injunction, damages and other appropriate relief to

6   impede Defendants' "spamming" Microsoft's Hotmail customers with unsolicited commercial e-

7   mail messages, Defendants' on-going abuse of Microsoft's JMRP and SNDS, and to recover

8   damages resulting from Defendants' fraudulent conduct.  In this action, Microsoft asserts

9   violations of the federal CAN-SPAM Act of 2003 (15 U.S.C. §7701 *et seq.*), the Digital

10  Millennium Copyright Act (17 U.S.C. § 1201 *et seq.*), the Computer Fraud Abuse Act (18 U.S.C.

11  § 1030 *et seq.*), the Washington Commercial Electronic Mail Act (RCW Ch. 19.190), the

12  Washington Consumer Protection Act (RCW Ch. 19.86), fraudulent disclosure and concealment,

13  negligent misrepresentation, common law trespass to chattels, common law conversion, and

14  breach of contract.

15  16.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28

16  U.S.C. § 1338(a).  This action also arises from Defendants' violations of Washington's

17  Consumer Protection Act (RCW 19.86), breach of contract, common law trespass to chattels,

18  common law conversion, fraud, fraudulent disclosure and negligent misrepresentation.

19  Accordingly, this Court has supplemental jurisdiction over the state law claims pursuant to 28

20  U.S.C. § 1367.

21  17.      This Court has personal jurisdiction over the Defendants because the Defendants

22  have purposefully availed themselves of the opportunity to conduct commercial activities in this

23  forum, and this Complaint arises out of those activities.  In particular, this case stems from

24  Defendants' abuse of Microsoft's Hotmail services, their unauthorized access of Microsoft's

25  computers, the abuse of Microsoft's JMRP and SNDS, and the abuse of Microsoft's users

26  through a spam e-mail campaign.  Microsoft owns and maintains computers and other

27  equipment, including specialized computers or "servers" that process e-mail messages, host

28  customer generated content and otherwise support Microsoft's Hotmail services in the State of

COMPLAINT FOR DAMAGES AND          7
EQUITABLE RELIEF

1   Washington.  Defendants are using false and misleading messages to induce Microsoft's Hotmail

2   users and others to visit Defendants' and their customers' websites.  Defendants have

3   circumvented Microsoft's Hotmail spam filters to send an enormous number of spam e-mail

4   messages to legitimate Hotmail users by, *inter alia*, creating millions of unauthorized Hotmail

5   accounts and abusing Microsoft's JMRP and SNDS to manipulate statistics on Media Network's

6   e-mail activity to deceive Microsoft that Media Network e-mails are not, in fact, spam.

7        18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a

8   substantial part of the events and/or omissions giving rise to the claims plead herein occurred in

9   the Western District of Washington.

10              **IV.  NATURE OF PLAINTIFF'S ONLINE SERVICES**

11       19.     Microsoft owns and operates interactive online computer services that enable its

12  customers to, among other things, access content and information on the Internet, exchange

13  electronic mail ("e-mail"), and publish customer-generated content on the Internet.  To provide

14  these services, hereinafter referred to as "Online Services," Microsoft owns and maintains

15  computers and other equipment, including specialized computers or "servers" that process e-mail

16  messages, host customer-generated content and otherwise support Microsoft's Online Services.

17  Microsoft maintains this equipment in Washington and California, among other states.  E-mail

18  sent to and from Microsoft's customers is processed through and stored on these computers.

19  Customer-generated content is also stored on these computers.

20       20.     Microsoft is an internet service provider ("ISP") and is an "interactive computer

21  service" as defined by RCW § 19.190.010.  Microsoft is a provider of "Internet access

22  service[s]" as defined by 15 U.S.C. § 7702(11).  Microsoft's computers and computer systems

23  are "protected computers" under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2).

24       21.     One of Microsoft's Online Services is "Hotmail" which provides free and

25  subscription-based e-mail on the Internet through a web-based e-mail service that can be

26  accessed at www.hotmail.com.  Hotmail allows account-holders to exchange e-mail messages

27  with any other e-mail user throughout the world who has an Internet e-mail address.  Hotmail has

28  millions of registered accounts, whose users all have unique e-mail addresses ending, for

COMPLAINT FOR DAMAGES AND                    8              Orrick Herrington & Sutcliffe LLP
EQUITABLE RELIEF                                                     701 5th Avenue, Suite 5600
                                                                     Seattle, Washington 98104-7097
                                                                     tel+1-206-839-4300

1    example, in "@hotmail.com, "@live.com" or "@hotmail.fr."

2         22.    To create a Hotmail e-mail account, a user must access Microsoft's websites.

3    Microsoft's websites, including the Hotmail sign-up webpage, contain copyrighted Microsoft

4    material.  This copyrighted material is cached or temporarily copied onto a user's computer's

5    main memory or Random Access Memory ("RAM").

6         23.    Before the system will generate a Hotmail e-mail account, a user must complete a

7    Completely Automated Public Turing Test To Tell Computers and Humans Apart

8    ("CAPTCHA").  CAPTCHAs are generally employed as a method of distinguishing computers,

9    software, and other machines from humans.  Among other things, CAPTCHAs prevent

10   automated computer software, sometimes referred to as "Bots" or "Spiders," from performing

11   actions that might degrade the quality of service of a given system resulting from abuse or

12   excessive expenditure of the system's resources.  One particular CAPTCHA Microsoft employs

13   is character recognition that requires the user to enter a combination of random and visually

14   obscured characters.  In the example below, a user must correctly enter the eight characters

15   "rWAibrUK" in the "Characters" field to complete the CAPTCHA.

16

17   

18

19                    Characters:

20   CAPTCHAs have been widely-deployed to protect systems vulnerable to, among other things, e-

21   mail spam.  Microsoft employs CAPTCHAs to control access to its copyrighted material.

22   Microsoft also employs CAPTCHAs to prevent the use of automated computer programs from

23   creating multiple Hotmail e-mail accounts at one time that could be used to send out spam or that

24   would otherwise degrade the quality of Microsoft's Hotmail services.

25        24.    To obtain a Hotmail e-mail account, a user must also accept the terms of

26   Microsoft's Service Agreement and Privacy Statement.  The Hotmail signup webpage advises

27   prospective Hotmail account holders, "Clicking **I accept** means that you agree to the Microsoft

28

COMPLAINT FOR DAMAGES AND                    9
EQUITABLE RELIEF

1  service agreement and privacy statement."  The phrase "Microsoft service agreement" provides a

2  hyperlink to Microsoft's Service Agreement (attached hereto as Appendix A).  Among other

3  things, the Service Agreement prohibits:

     a.    using Hotmail services to send unsolicited bulk messages or unsolicited

        commercial messages;

     b.    using an automated process or service – such as a BOT, a spider, periodic

        caching of information stored by Microsoft, or "meta-searching" – to

        access and/or use Hotmail services;

     c.    using any authorized means to modify or reroute, or attempt to modify or

        reroute Hotmail services;

     d.    damaging, disabling, overburdening, or impairing Hotmail services (or the

        network(s) connected to service) or interfering with anyone's use and

        enjoyment of the services; and

     e.    reselling or redistributing Hotmail services or any part of that service.

15      25.    Microsoft's Service Agreement also requires Hotmail users to abided by

16  Microsoft's Anti-Spam Policy (attached hereto as Appendix B).  Microsoft's Service Agreement

17  includes a hyperlink to its Anti-Spam Policy.  A hyperlink to Microsoft's full Terms of Use is

18  available, *inter alia,* from Microsoft's Anti-Spam Policy web page (attached hereto as Appendix

19  C).

## V.  THE NATURE OF UNSOLICITED E-MAIL OR "SPAM"

21      26.    Unsolicited commercial e-mail is often referred to as "spam."  The transmission

22  of spam, a practice referred to as "spamming," by persons known as "spammers," is widely

23  condemned in the Internet community, and is of significant concern and economic detriment to

24  Microsoft and its customers.

25      27.    By using the Internet to send unsolicited, mass quantities of commercial e-mail

26  messages, spammers not only obtain significant cost savings, but impose significant economic

27  burdens on ISPs such as Microsoft, on Microsoft's customers and on the general public.

28  Although it costs very little for a spammer to transmit innumerable e-mail messages, handling

1   the enormous volume of e-mail initiated by spammers places a tremendous burden on Microsoft

2   and consumers.

3       28.     Microsoft's Online Services and the computers and computer systems providing

4   those services are designed and created solely for the benefit and the non-commercial personal

5   use of its customers.  The computers and computer systems have finite capacity and are not

6   designed to accommodate innumerable, automated mass mailings from spammers.  Microsoft

7   has been required to expend substantial amounts for new equipment to handle the mass mailings

8   by spammers.

9       29.     Spamming can and does result in the degradation and disruption of Microsoft's

10  computers and computer systems.  Spam demands storage space and processing capacity of

11  Microsoft's computers and computer systems, making those resources unavailable to serve the

12  legitimate needs of Microsoft's customers.  The diversion of these resources from processing

13  authorized e-mail impairs the normal operation of the computers and computer systems.

14  Therefore, the value of that equipment is diminished by spamming.

15      30.     Spamming also has significant impact on the recipients of spam.  Individuals who

16  receive spam must take the time and effort to sort through larger volumes of received e-mail,

17  must attempt to distinguish spam from legitimate e-mail, and ultimately discard this unsolicited

18  material.  In an effort to mislead e-mail recipients and to make it more difficult for them to

19  identify and discard these unsolicited advertisements, spammers frequently use deceptive

20  methods such as, for example, false or misleading information in the e-mail headers and subject

21  lines.  When a spammer uses deceptive information to disguise spam as legitimate personal or

22  business e-mail, it causes additional inconvenience and frustration to spam recipients.

23      31.     Spam frequently involves products or services of questionable value, or materials

24  of an adult or pornographic nature.  Unsolicited advertisements for such products or services,

25  often disguised, are a particularly obtrusive form of spam and are often the subject of customer

26  complaints.

27      32.     In an attempt to protect itself and its customers from spam, Microsoft has

28  expended significant resources to develop technologies and practices to prevent its subscribers

COMPLAINT FOR DAMAGES AND                       11
EQUITABLE RELIEF

1  from receiving spam.  Spammers, however, continue to adopt practices and technological

2  devices to evade Microsoft's technologies and to frustrate Microsoft's efforts.

3      33.    In passing the Commercial Electronic Mail Act, RCW Ch. 19.190, in 1998,

4  Washington became one of the first states to regulate spam. The legislature has recognized that

5  the spamming practices prohibited by the Act are "matters vitally affecting the public interests"

6  and are unfair and deceptive practices which impact Washington businesses and consumers.

7      34.    Microsoft has a clearly articulated policy prohibiting the use of its services for

8  junk e-mail, spamming, or any unsolicited messages (commercial or otherwise).  Microsoft's

9  Anti-spam policy, prohibits sending e-mails to or through Microsoft's Online Services where the

10  e-mails:

11      a.    use or contain invalid or forged headers;

12      b.    use or contain invalid or non-existent domain names;

13      c.    employ any technique to otherwise misrepresent, hide or obscure any

14      information in identifying the point of origin or the transmission path;

15      d.    use other means or deceptive advertising;

16      e.    use a third party's internet domain name, or be relayed from or through a

17      third party's equipment, without the permission of the third party;

18      f.    contain false or misleading information in the subject line or otherwise

19      contain false or misleading content;

20      g.    fail to comply with additional technical standards described in Microsoft's

21      Anti-spam policy (at privacy.microsoft.com/en-us/anti-spam.mspx); or

22      h.    otherwise violate the applicable Terms of Use for the Services.

23      35.    The Terms of Use for Microsoft's Online Services, can be accessed via a clearly

24  marked link on home.live.com, as well as on the home pages for each of the services.

25  **VI.  MICROSOFT'S JUNK E-MAIL REPORTING PROGRAM ("JMRP")**

26  **AND SMART NETWORK DATA SERVICES ("SNDS")**

27      36.    Microsoft is committed to protecting its users from spam and preventing the use

28  of its services for junk e-mail, spamming, or any other unsolicited messages.  Recognizing that

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF    12

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1  that legitimate and law-abiding senders of bulk e-mail should be distinguished from spammers

2  and should not be negatively affected, Microsoft instituted a Junk E-mail Reporting Program

3  intended to help senders of large or bulk e-mail messages to remove unwanted recipients from

4  their distribution lists.  (*See* Appendix D.)

5  　　　　　37.　　　Offered as a free program, Microsoft intended the JMRP to reduce the amount of

6  unwanted or unsolicited e-mails recipients receive.  Microsoft also intended the JMRP as an

7  opportunity for senders of bulk e-mail to change their e-mailing practices in order to reduce junk

8  e-mail reports and to remove recipients who do not welcome such contact from their distribution

9  lists.

10  　　　　　38.　　　Senders of bulk e-mail that sign up for the program receive e-mail notifications

11  that their messages have been identified by the system or by recipients as potential spam and

12  blocked.  This notification or "Feedback" provides senders of bulk e-mail an opportunity to

13  mitigate the transmission of unsolicited e-mail as well as an opportunity for senders to change

14  their e-mailing practices to reduce junk e-mail.  In particular, a sender may establish that its bulk

15  mail should not be blocked based on statistics regarding the percentage of its e-mails marked by

16  recipients as spam.

17  　　　　　39.　　　To sign up for the JMRP, a company must sign a Junk Email Reporting

18  Agreement.  By signing the Junk Email Reporting Agreement, a company agrees to "use the

19  Feedback only for purposes of reducing the occurrences of Junk Email."

20  　　　　　40.　　　As part of the suite of services it provides legitimate and law-abiding senders of

21  bulk e-mail, Microsoft also offers Smart Network Data Services, a free program that provides

22  senders of bulk e-mail data about their e-mail messages, including e-mail activity, recipient

23  complaint rates for a sender's e-mail, and filter related information.  Microsoft developed the

24  SNDS to protect consumers from abusive activities but to also reverse the trend of eroding trust

25  in e-mail communications.  (*See* Appendix D.)  Microsoft intends for participants of SNDS to

26  use the information to improve the deliverability by removing from their distribution lists

27  recipients that do not want to receive the senders' e-mails.

28  　　　　　41.　　　Microsoft does not intend enrollment in JMRP or SNDS as a mechanism to

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

13

1   circumvent its Hotmail spam filters.  Rather, both programs are intended to protect recipients of

2   unwanted e-mail messages and to provide law-abiding senders of bulk e-mail a method of

3   identifying recipients of unwanted e-mail to remove them their distribution lists.  Microsoft, in

4   fact, advises participants in its JMRP and SNDS programs that a sender of bulk e-mail that fails

5   to reduce junk e-mail will be removed the program and failure to reduce junk e-mail can

6   adversely affect deliverability of a sender's e-mails to Hotmail users.

## VII.  DEFENDANTS AND THEIR UNLAWFUL CONDUCT

8       **42.**      Upon information and belief, Defendants developed and executed an elaborate

9   scheme to circumvent Microsoft's Hotmail spam filters to disseminate a large quantity of spam

10  e-mail advertisements to Microsoft's Hotmail users.  Defendants, upon information and belief,

11  enrolled in Microsoft's JMRP and SNDS under false pretense to gain access to detailed data

12  about Defendants' e-mail activity, hired a team and used computer software to generate millions

13  of unauthorized Hotmail e-mail accounts, and then used those unauthorized Hotmail e-mail

14  accounts to sanitize Defendants' spam by identifying their own spam e-mail messages as "not

15  spam."  By doing so, Defendants fraudulently manipulated their e-mail activity statistics and

16  used this manipulated data to justify to Microsoft that Defendants' e-mail messages were not

17  spam.  Defendants' deceptive conduct allowed them to circumvent Hotmail's spam filters and to

18  continue to disseminate a vast quantity of spam e-mail messages to legitimate Hotmail users.

### MR. MIZHEN OWNS AND OPERATES A SUITE OF ENTITIES THAT DEFENDANTS USE TO CONDUCT UNLAWFUL SPAM CAMPAIGNS

21      43.      Businesses will sometimes contract with an on-line advertising company to

22  manage an on-line advertisement campaign.  An on-line advertising company would be

23  responsible for developing the advertisements, placing the advertisements either on websites as

24  "banner ads" or through e-mail messages campaigns to internet users, and tracking the results of

25  the campaign.  An on-line advertising company would also be responsible for driving Internet

26  "traffic" to the business' websites.  On-line advertising companies might do so by sending bulk

27  commercial e-mail messages to individuals.  Internet users who receive these e-mails containing

28  advertisements may click on the advertisements to visit the business' website, where the user

1  may then purchase products or services.

2      44.    Upon information and belief, Defendant Mr. Mizhen owns, controls, operates, and

3  maintains a group of entities, including Defendants Media Network, New Age Opt-In, and I-

4  Permission.  Media Network purports to be an "on-line advertising company" with "real

5  solutions for today's advertisers" that will develop, manage, operate, and track e-mail advertising

6  campaigns.  (*See* http://www.medianetwork.com/publishers.x.)  New Age Opt-In claims to

7  "specializ[e] in email marketing" and purports to offer on-line advertising services using e-mail

8  channels.  (*See* http://www.newageoptin.com/aboutus.htm.)  I-Permission also purports to offer

9  on-line advertising services using e-mail channels.  (*See* http://www.i-permission.com/about.x.)

10     45.    Defendants Media Network, New Age Opt-In, and I-Permission have registered

11  and currently own, control, operate, and maintain website domains.  Defendants Media Network,

12  New Age Opt-In, and I-Permission also own, control, operate, and maintain storage space on

13  specialized computers or "servers."

14     46.    On information and belief, Defendants have and continue to use the domains

15  owned, controlled, operated, and maintained by Defendants Media Network, New Age Opt-In,

16  and I-Permission for, among other things, an unlawful spam campaign by transmitting vast

17  numbers of unsolicited commercial e-mail messages to Microsoft's Hotmail users that, among

18  other things, include these domains in the originating e-mail addresses contained in the header

19  information of the spam e-mail messages or as hyperlinks within the commercial e-mail

20  messages.

21     47.    On information and belief, Defendants have and continue to use servers owned,

22  operated, maintained, and controlled by Defendants Media Network, New Age Opt-In, and I-

23  Permission for, among other things, an unlawful spam campaign by transmitting vast numbers of

24  unsolicited commercial e-mails messages to Microsoft's Hotmail users originating from these

25  servers.

26     48.    On information and belief, the unsolicited commercial e-mail messages

27  Defendants have sent to Microsoft's Hotmail users contain, *inter alia*, header information that is

28  materially false or materially misleading, that contains deceptive headings, and that failed to

COMPLAINT FOR DAMAGES AND                    15
EQUITABLE RELIEF

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1   provide a valid physical postal address of the sender.

2        49.    On information and belief, Defendants have profited form their unlawful spam

3   campaign.  Recipients of spam e-mail disseminated by Defendants Media Network's, New Age

4   Opt-In's, and I-Permission's are induced to click on the links in the spam e-mail.  Clicking on

5   any of these links takes a recipient to one of the domains registered by Defendants Media

6   Network, New Age Opt-In, I-Permission or by one of their customers.  On information and

7   belief, Defendants revenue is directly related to number of internet users that respond to its e-

8   mail campaigns – measured by the number of visitors to a webpage – or on the given size of a

9   particular campaign.  To maximize the traffic to a customers' webpage or the size of an on-line

10  ad campaign – and thus Defendants revenue – Defendants have and are disseminating spam e-

11  mails and are misusing Microsoft's Hotmail services to drive traffic to websites operated by

12  Defendants or their customers.

13      **D**EFENDANTS' **A**BUSED **M**ICROSOFT'S **JMRP** AND **SNDS** **T**O **S**ANITIZE **T**HEIR **O**WN **S**PAM

14       50.    To further their unlawful spam campaign, Defendants developed and executed a

15  plan to circumvent Microsoft's Hotmail spam filters.

16       51.    As early as May 2008, Microsoft's Hotmail spam filters were blocking unsolicited

17  commercial e-mail messages originating from IP addresses used by Media Network.  Mr.

18  Kovalsky enrolled Media Network into Microsoft's Junk E-Mail Reporting Partner Program

19  giving Defendants access to Microsoft's JMRP and SNDS programs.  (*See* Appendix E.) When

20  he enrolled Media Network into Microsoft's JMRP, Mr. Kovalsky represented, *inter alia*, that (a)

21  Media Network followed standard CAN-SPAM Act practices, (b) identified a homepage that

22  allowed recipients to opt-out of the receiving the e-mail, and (c) stated that Media Network could

23  remove recipients that complained from its e-mail lists.

24       52.    By enrolling in the JMRP and SNDS programs, Defendants would also receive

25  notifications or "Feedback" when recipients marked its e-mail messages as "junk e-mail" or

26  "spam" and when Hotmail's spam filters blocked Media Network's bulk e-mail messages.

27  Under the JMRP and SNDS, Media Network agreed to use this Feedback only to reduce

28  occurrences of recipients receiving unsolicited commercial e-mail.  Upon information and belief,

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF
       16

1  shortly after enrolling with Microsoft's JMRP and SNDS, Defendants began their scheme to

2  circumvent Hotmail's spam filters.

3      53.     Upon information and belief, Defendants hired Mr. Ranak to create millions of

4  unauthorized Hotmail email accounts to circumvent Microsoft's spam filter.  Mr. Ranak offers to

5  create thousands of "verified" Hotmail e-mail accounts with usernames and passwords for as

6  little as $15.00 per thousand email accounts.  On information and belief, as part of the services

7  he offers, Mr. Ranak manufactures, traffics, and offers to the public technologies, products,

8  services, devices, and components designed and produced for the purpose of circumventing

9  technological measures used to control access to copyrighted works, including technologies

10  capable of bypassing the CAPTCHAs Microsoft uses to protect the copyrighted material on its

11  Hotmail webpages.

12      54.     Upon information and belief, on numerous occasions, Mr. Ranak created and

13  provided to Defendants unauthorized Hotmail e-mail accounts.  On information and belief, Mr.

14  Ranak – using technologies, products, services, devices, and components designed and produced

15  for the purpose of circumventing technological measures used to control access to copyrighted

16  works – automatically generated these Hotmail e-mail accounts that Defendants then used to

17  send unsolicited commercial e-mail to legitimate Hotmail users.  Mr. Ranak, by creating these

18  Hotmail e-mail accounts and accessing Microsoft's Hotmail services, has explicitly agreed to

19  abide by Microsoft's Service Agreement, Anti-Spam Policy, and Terms of Use.

20      55.     Upon information and belief, Mr. Mizhen and Mr. Kovalsky also purchased

21  software from eSolution that allowed Defendants to automatically generate unauthorized

22  Hotmail e-mail accounts.  On information and belief, eSolutions manufactures, traffics, and

23  offers to the public technologies, products, services, devices, and components designed and

24  produced for the purpose of circumventing technological measures used to control access to

25  copyrighted works.  On information and belief, eSolutions offered to Defendants products and

26  services – including "Hotmail Accounts Creator," "Hotmail Accounts Creator (Winsock),"

27  "Hotmail Accounts Verifier (Winsock)," and "CAPTCHA Bypasser" – that Defendants used to

28  automatically generate unauthorized Hotmail e-mail accounts.  These products and services,

COMPLAINT FOR DAMAGES AND                    17
EQUITABLE RELIEF

among other things, were designed to bypass Microsoft's technological measures, including the CAPTCHAs Microsoft employs to control access to the copyrighted material on its Hotmail webpages. By creating these Hotmail e-mail accounts and accessing Microsoft's Hotmail services, Defendants explicitly agreed to abide by Microsoft's Service Agreement, Terms of Use, and Anti-Spam Policy.

56.    Upon information and belief, to use the products offered by eSolutions, Defendants also purchased services from Decaptcher. On information and belief, Decaptcher manufactures, traffics and offers to the public technologies, products, services, devices, and components designed and produced for the purpose of circumventing technological measures used to control access to copyrighted works. On information and belief, Decaptcher offered to Defendants technologies, products, services, devices, and components that were designed to bypass Microsoft's technological measures, including CAPTCHAs Microsoft employs to control access to the copyrighted material on its Hotmail webpages.

57.    Defendants also hired Mr. Ranak to assist with circumventing Hotmail's spam filters. Mr. Kovalsky and Mr. Mizhen negotiated a deal to engage Mr. Ranak and a team of three individuals to work twenty-four (24) hours a day and seven (7) days a week to mark Defendants' spam e-mail messages sent to the purchased Hotmail accounts as "not junk." Upon information and belief, as part of its e-mail campaigns, Defendants would send its spam e-mail messages not only to legitimate Hotmail users, but also to the unauthorized Hotmail e-mail accounts it purchased from Mr. Ranak. Microsoft's Hotmail spam filters would identify Defendants' e-mail messages as spam and place those in a "Junk" folder. Using the purchased Hotmail e-mail accounts, Mr. Ranak and his team would transfer Defendants' spam e-mail messages from the "Junk" folder into the "Inbox" in each purchased Hotmail e-mail account receiving Media Network's spam.

58.    Upon information and belief, using the products and services provided by Mr. Ranak, eSolutions, and Decaptcher, Defendants created millions of Hotmail e-mail accounts to sanitize their own spam e-mail messages. On information and belief, for more than six (6) months, Mr. Ranak and his team worked 24 hours a day, seven days a week, in three shifts per

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

18

1  day to move up to eighty-five of Defendants' spam e-mail messages per purchased Hotmail e-

2  mail account from the "Junk" folders to the "Inbox" of the purchased Hotmail e-mail accounts.

3  Microsoft is informed and believes and thereupon alleges that using this process, Mr. Ranak and

4  his team transferred as much as **200,000 per day** of Defendants' spam e-mail messages from

5  "Junk" folders to "Inbox" folders.  Transferring Defendants' e-mails from "Junk" folders to

6  "Inbox" folders on such a large scale manipulated the statistics regarding Defendants' e-mail

7  activity, specifically by artificially lowering the recipient-reported complaint level.

8         59.     On more than 100 instances between May 2008 and April 2010, Microsoft's

9  Hotmail spam filters blocked bulk e-mail messages sent to legitimate Hotmail users originating

10  from Defendants.  Under the JMRP and SNDS, Defendants – specifically Mr. Kovalsky –

11  received e-mail notifications or "Feedback" identifying the IP addresses from which the blocked

12  messages originated and requesting that Mr. Kovalsky contact Microsoft's Windows Live

13  Hotmail Domain Support to reconcile the problem.  Mr. Kovalsky forwarded these messages to

14  Mr. Mizhen.

15         60.     Between May 2008 and April 2010, Mr. Kovalsky responded to Microsoft and

16  represented that the blocked messages were not spam.  As justification that the Media Network

17  e-mail messages were not spam, Mr. Kovalsky referenced the manipulated complaint level

18  statistics.  Mr. Kovalsky, however, failed to disclose that Defendants, contrary to the JMRP

19  Agreement, used the Feedback regarding Defendants' e-mail activity to circumvent Hotmail's

20  spam filters.  Specifically, Mr. Kovalsky failed to disclose that Defendants had, in fact,

21  artificially lowered the recipient-reported complaint level number by creating and purchasing

22  millions of unauthorized Hotmail e-mail accounts and then hiring a team to sanitize Defendants

23  spam e-mail messages by transferring those e-mail messages from the purchased Hotmail e-mail

24  accounts' "Junk" folders to their "Inboxes."  Nor did Mr. Kovalsky disclose to Microsoft that

25  Defendants had created these Hotmail e-mail accounts in violation of Microsoft's Service

26  Agreement, Terms of Use, and Anti-Spam Policy.

27         61.     Based on Mr. Kovalsky's representations, Microsoft unblocked Defendants' spam

28  e-mail messages.  Consequently, Defendants' spam e-mail messages were sent to legitimate

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF     19

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    Hotmail users.  Had Microsoft known Mr. Kovalsky's representations were false or had known

2    of the facts Mr. Kovalsky concealed, Microsoft would not have unblocked Defendant' spam e-

3    mail messages.

4           62.    Defendants' deception has undermined a fundamental purpose of Microsoft's

5    JMRP – namely protecting Internet users from unsolicited commercial e-mail messages.

6    Defendants' conduct also undermines Microsoft's efforts to distinguish legitimate and lawful

7    senders of bulk e-mail from unlawful senders of spam.

8           63.    Defendants' conduct has caused and, if not restrained, will continue to cause,

9    Microsoft's computer equipment and servers to process billions more of improper spam e-mails.

10   These e-mails threaten to delay and otherwise adversely affect Hotmail subscribers in sending

11   and receiving legitimate e-mail, and have resulted in and continue to result in significant costs to

12   Microsoft.  These e-mails are a detriment to users' experiences of Microsoft's high-quality e-

13   mail services and are a detriment to Microsoft's goodwill and brand.  Microsoft is further injured

14   because Defendants' actions require Microsoft to unfairly bear the costs of taking action to

15   prevent and reduce spam e-mail.

16          64.    Defendants' actions have caused and, if not restrained, will continue to cause

17   Microsoft to unfairly bear costs to operate and support its JMRP and SNDS, as Defendants

18   abused the JMRP and SNDS mitigation policies to circumvent Microsoft's spam filters, thus

19   allowing Defendants to continue to violate Microsoft's Service Agreement, Terms of Use, and

20   Anti-Spam Policy by sending unsolicited bulk e-mail with commercial messages.  Defendants'

21   actions are a detriment to users' experiences of Microsoft's high-quality Hotmail services and

22   are a detriment to Microsoft's goodwill and brand.  Microsoft is further injured because

23   Defendants' actions require Microsoft to unfairly bear the costs of taking action to prevent and

24   reduce the abuse of its JMRP.

25          65.    Upon information and belief, Defendants have profited from their unlawful spam

26   campaign, abuse of Microsoft's JMRP and SNDS mitigation policies, and deceptive conduct.

27   Recipients of spam e-mail disseminated by the Defendants are induced to click on links in the

28   spam e-mail and visit Defendants' and their customers' websites.

COMPLAINT FOR DAMAGES AND                    20
EQUITABLE RELIEF

**MR. MIZHEN IS PERMANENTLY ENJOINED FROM SPAMMING MICROSOFT'S HOTMAIL USERS**

66.     In 2003, Microsoft filed a lawsuit against Mr. Mizhen and his company Merchant Commerce, LLC ("Merchant Commerce") in the State of Washington Superior Court for King County (Case No. 03-2-15706-6SEA) ("the Lawsuit"), alleging, *inter alia*, that Mr. Mizhen and Merchant Commerce had engaged in an unlawful spam campaign using Microsoft's Hotmail Services and directed specifically toward Microsoft's Hotmail users.  Microsoft asserted claims for common law breach of contract, trespass to chattels, and conversion as well as violations of the CAN-SPAM Act, the Washington Commercial Electronic Mail Act, the Washington Consumer Protecting Act, the federal Computer Fraud and Abuse Act, and California Business and Professions Code.

67.     On February 23, 2004, Microsoft, Mr. Mizhen, and Merchant Commerce executed a Confidential Release and Settlement Agreement (the "Settlement Agreement") that settled Microsoft's claims against Mr. Mizhen and Merchant Commerce.  The Settlement Agreement is attached hereto as Appendix F.

68.     On February 27, 2004, Microsoft, Mr. Mizhen and Merchant Commerce executed a Stipulated Judgment (the "Judgment") and a Stipulated Permanent Injunction ("Permanent Injunction") for $2,000,000.  The Superior Court of the State of Washington for King Count awarded Microsoft a $2,000,000 judgment as well as post-judgment interest at twelve (12) percent per annum.  The Judgment and Permanent Injunction are attached hereto as Appendix G.

69.     The Permanent Injunction prohibited Mr. Mizhen, Merchant Commerce and their agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest from among other things:

a.     sending spam e-mail in violation of Washington's Commercial Electronic Mail Act or the federal CAN-SPAM Act;

b.     using Microsoft's Hotmail Services – including MSN Internet Access or MSN Hotmail – in violation of or in a manner inconsistent with the MSN Terms of Use;

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

c.      obtaining, compiling, selling, trafficking in, or trading, or directing aiding, or conspiring with others to obtain, compile, sell, traffic in, or trade e-mail addresses for sending or delivery of any unsolicited bulk or unsolicited commercial e-mail in violation of state or federal law;

d.      opening, creating or accessing, or directing, aiding, facilitating or conspiring with others to open, create, or access any Microsoft's Communication Services accounts, including but not limited to Microsoft's Hotmail e-mail accounts inconsistent with MSN Terms of Use; and

e.      selling, offering for sale or distributing, or directing, aiding or conspiring with others to sell, offer for sale or distribute any software that allows the user to send unsolicited bulk or unsolicited commercial e-mail to, among others, Microsoft's Hotmail users.

70.     Mr. Mizhen and Merchant Commerce acknowledged that a violation of the Permanent Injunction would entitle Microsoft and injured third parties, among other damages:

a.      if an Internet Service Provider, the greater of $25,000 or $2.00 per 1000 e-mail messages sent, corresponding to the claimant's reputation and lost profit damages, as well as attorneys' fees, expenses, and costs;

b.      if an end user such as domain owner or internet subscriber, liquidated damages of $1,000 per e-mail, as well as all attorneys' fees, expenses and costs.

71.     Under Paragraph 3 of the Permanent Injunction, Mr. Mizhen and Merchant Commerce were required to provide all employees, agents, contractors, or affiliates acting on their behalf in regard to electronic marking a copy of the Permanent Injunction.

72.     The Settlement Agreement, moreover, entitled Microsoft to damages resulting from Mr. Mizhen or Merchant Commerce's breaches of the Permanent Injunction.   Paragraph 5 of the Settlement Agreement entitled Microsoft to additional relief to redress the additional harm resulting from Mr. Mizhen and/or Merchant Commerce's conduct.  Specifically, any breach or

1   violation of the Settlement Agreement and/or the Permanent Injunction, or for any other

2   unlawful activity, entitled Microsoft to enforce all of its legal remedies for the breach and/or

3   wrongful activity, including but not limited to, recovering actual damages including: (1) the

4   maximum amount of statutory damages under applicable statutes and acts, (2) profits of Mr.

5   Mizhen and Merchant Commerce, (3) treble damages, and/or (4) attorney's fees and costs.

6       73.     Under Paragraph 6 of the Settlement Agreement, Mr. Mizhen and Merchant

7   Commerce acknowledged the irreparable harm injury that a breach of the Settlement Agreement

8   or Permanent Injunction would cause Microsoft and, as such, gave Microsoft the right to seek

9   immediate injunctive relief to prohibit any such violation of the Settlement Agreement and/or

10  Permanent Injunction.

11      74.     Paragraph 8 of the Settlement Agreement entitled Microsoft to recover the costs

12  and actual expenses associated with enforcement of the Settlement Agreement and/or Permanent

13  Injunction, including reasonable attorneys' fees and costs.

14      75.     Microsoft is informed and believes and thereupon alleges that at all relevant times

15  Defendants are and were acting within the course and scope of such agency and with permission,

16  consent, at the direction of, and on behalf of the other Defendants – specifically at the direction

17  of Mr. Mizhen as the principal for Defendants Media Network, New Age Opt-In, and I-

18  Permission.

19      76.     Microsoft is informed and believes and thereupon alleges that the Defendants,

20  through their conduct alleged herein, have been in continuous breach of the Permanent

21  Injunction and Settlement Agreement by, among other things:

22          a.     violating Microsoft's Service Agreement, Terms of Use, and Anti-Spam

23                 Policy;

24          b.     sending a vast number of unsolicited commercial e-mail messages

25                 Hotmail users in violation of Washington's Commercial Electronic Mail

26                 Act and the CAN-SPAM Act;

27          c.     purchasing and generating millions of Hotmail e-mail accounts to send

28                 vast quantities of spam e-mail messages to legitimate Microsoft Hotmail

1    use and to circumvent Microsoft's Hotmail spam filters and JMRP;

2    d.    obtaining, compiling, selling, trafficking in, and directing, aiding, or

3          conspiring with others to obtain, compile, sell, traffic in, or trade e-mail

4          addresses for sending or delivery of any unsolicited bulk or unsolicited

5          commercial e-mail in violation of state or federal law; and

6    e.    selling, offering for sale or distributing, or directing, aiding or conspiring

7          with others to sell software that allows a user to send unsolicited

8          commercial e-mail messages to Microsoft's Hotmail users.

9    77.    Defendants' breaches of the Permanent Injunction and Settlement Agreement

10   have caused and, if not restrained, will continue to cause, Microsoft's computer equipment and

11   servers to process billions more of improper spam e-mail and will further erode the quality and

12   integrity of Microsoft's Hotmail services. These e-mails threaten to delay and otherwise

13   adversely affect Hotmail subscribers in sending and receiving legitimate e-mail, and have

14   resulted in and continue to result in significant costs to Microsoft. These e-mails are a detriment

15   to users' experiences of Microsoft's high-quality e-mail services and are a detriment to

16   Microsoft's goodwill and brand. Microsoft is further injured because Defendants' actions

17   require Microsoft to unfairly bear the costs of taking action to prevent and reduce spam e-mail.

18   78.    Upon information and belief, Defendants have profited from and been unjustly

19   enriched by their breaches of the Settlement Agreement and Permanent Injunction. Recipients of

20   spam e-mail disseminated by the Defendants are induced to click on links in the spam e-mail and

21   visit Defendants' or their customers' websites.

22   **VIII.  CLAIMS FOR RELIEF**

23   **FIRST CLAIM FOR RELIEF**

24   (Violation Of The Federal Controlling The Assault Of Non-Solicited Pornography And

25   Marketing Act Of 2003 ("CAN-SPAM" – 15 U.S.C. § 7704(a)(1), (2), (5), (b)(2) and (3))

26   79.    Microsoft realleges and incorporates by this reference each and every allegation

27   set forth in paragraphs 1 through 78 above.

28

80.    Microsoft is a provider of internet access services.  Microsoft owns and operates interactive online computer services that enable its customers to, *inter alia*, access content and information  on the Internet, including proprietary and exclusive content, e-mail, and other Internet services.

81.    Defendants initiated the transmission of commercial electronic mail messages that contain header information that is materially false or materially misleading, to protected computers, which are used in interstate and foreign commerce and communication.

82.    Defendants engaged in a pattern or practice of initiating the transmission, to protected computers, of commercial electronic mail messages:

a.    knowing that the subject headings of the messages would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject of the message; and

b.    that failed to provide a clear and conspicuous notice of the opportunity to decline to receive further commercial electronic mail messages from the sender; and

c.    that failed to provide a valid physical postal address of the sender.

83.    Defendants initiated the transmission and relayed, to protected computers, through unauthorized access, of electronic mail messages that violate 15 U.S.C. § 7704(a), and assisted in the initiation of such messages by providing electronic mail addresses, knowing that the electronic mail addresses of the recipients were obtained using automated means from an Internet website or proprietary online service operated by another person, and such website or service included a notice stating that the operator will not give, sell, or otherwise transfer addresses maintained by such website or service to any other party for the purpose of initiating, or enabling others to initiate, electronic mail messages.

84.    Defendants used computers, software, scripts, and other automated means – including but not limited to "Hotmail Accounts Creator (Winstock)," "Hotmail Accounts Verifier (Winstock)" and "CAPTCHA Bypasser" – to automatically create and register millions of Hotmail e-mail accounts from which to transmit to a protected computer or enable another

1  person to transmit to a protected computer, a commercial e-mail message that is unlawful under

2  section 15 U.S.C. § 7704(a).

3       85.     Defendants' actions were willful and knowing.

4       86.     Microsoft has been adversely affected by Defendants' violation of CAN-SPAM.

5  Defendants' actions violated 15 U.S.C. § 7704(a)(1), (a)(2), (a)(5), (b)(2) and (b)(3), and entitle

6  Microsoft to injunctive relief, statutory damages, aggravated damages, costs, and attorneys fees.

7  **SECOND CLAIM FOR RELIEF**

8  (Violation of the Washington Commercial Electronic Mail Act (RCW Ch. 19.190) and the

9  Washington Consumer Protection Act (RCW Ch. 19.86))

10       87.     Microsoft realleges and incorporates by reference each and every allegation set

11  forth in paragraphs 1 through 86 above.

12       88.     Defendants initiated the transmission or assisted in the transmission of

13  commercial e-mail messages from a computer located in Washington and/or to an e-mail address

14  that they knew, or had reason to know, is held by a Washington resident.  Those commercial

15  e-mail messages:

16            a.     used Microsoft's or another third party's Internet domain name without

17                    permission;

18            b.     misrepresented or obscured information identifying the point of origin or

19                    the transmission path of a commercial electronic e-mail message; or

20            c.     contained false or misleading information in the subject line.

21       89.     As a result of Defendants' actions, Microsoft has been damaged in an amount to

22  be proven at trial

23       90.     Defendants' actions violated RCW § 19.190.020, and entitle Microsoft to actual

24  damages or statutory damages of $1,000 per e-mail, whichever is greater.

25       91.     Defendants' actions affected the public interest, are unfair or deceptive acts in

26  trade or commerce and unfair methods of competition, and violated the Washington Consumer

27  Protection Act, RCW Ch. 19.86. Microsoft is entitled to treble damages and an award of its

28  attorneys' fees and costs under that Act.

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

26

**THIRD CLAIM FOR RELIEF**

(Violation of the Digital Millennium Copyright Act (17 U.S.C. § 1201))

92.      Microsoft realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 91 above.

93.      Microsoft's websites, including the webpages associated with its Hotmail services, contain Microsoft copyrighted material.

94.      Microsoft's Hotmail services are governed by Microsoft's Service Agreement, Terms of Use, and Anti-Spam Policy that give a user a limited non-exclusive license to copy the Microsoft copyrighted material from its Hotmail webpages.

95.      Microsoft controls access to copyrighted material on its websites, including its copyrighted material on the webpages associated with its Hotmail services, by employing technological measures, including CAPTCHAs.

96.      Defendants manufacture, import, offer to the public, provide, market or otherwise traffic in technologies, devices, components, and parts thereof – including "Hotmail Accounts Creator," "Hotmail Accounts Creator (Winsock)," "Hotmail Accounts Verifier (Winsock)" and "CAPTCHA Bypasser" – that are primarily designed and produced for the purpose of circumventing a technological measure that effectively controls access to a copyrighted work.

97.      Defendants manufacture, import, offer to the public, provide, or otherwise traffic in technologies, devices, components, and parts thereof – including "Hotmail Accounts Creator," "Hotmail Accounts Creator (Winsock)," "Hotmail Accounts Verifier (Winsock)" and "CAPTCHA Bypasser" – that are primarily designed or produced for the purpose of circumventing protections afforded by a technological measure that effectively protects a right of a copyright owner under the Copyright Act, including the right to grant limited access to its copyrighted work by preventing automated access to the copyrighted material on its Hotmail webpages.

98.      Defendants' manufacturing, importation, offers to the public, trafficking and use of technologies, devices, components, and parts thereof – including "Hotmail Accounts Creator," "Hotmail Accounts Creator (Winsock)," "Hotmail Accounts Verifier (Winsock)" and

27

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

"CAPTCHA Bypasser" – allows third parties, including Defendants and their customers, access to Microsoft's copyrighted material on its Hotmail webpages.

99.     The access provided by Defendants' technologies, devices, components, and parts thereof is unauthorized as it breaches to terms of Microsoft's Service Agreement, Terms of Use and Anti-Spam Policy.

100.     This unauthorized access to the copyrighted material on Hotmail webpages infringes Microsoft's copyrights as it entails, among other things, copying of its Hotmail webpages in excess of the limited non-exclusive license.

101.     As a result of Defendants' conduct, Microsoft has been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

(Violation of the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030(a)(4) and (a)(5))

102.     Microsoft realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 101 above.

103.     Microsoft's computers hosting the Hotmail services are "protected computer[s]" within the scope of the 18 U.S.C. § 1030(e)(2)(B), in that they are used in interstate commerce or communication.

104.     Defendants knowingly, with intent to defraud, and without authorization or in excess of authorization, accessed the Microsoft-owned protected computers, and by means of such conduct, further the intended fraud and obtained without payment services valued in excess of $5000 in a one-year period, within the scope of 18 U.S.C. § 1030(a)(4).

105.     Defendants knowingly caused the transmission of information and commands, and as a result of such conduct, intentionally caused damage without authorization to the Microsoft-owned protected computers, within the scope of 18 U.S.C. §1030(a)(5).

106.     The Defendants caused losses in excess of $5000 and damage to Microsoft's protected computers in a one year period, in that their conduct has impaired the integrity and availability of data, programs, systems, and information provided to Microsoft's Hotmail users. Defendants have also caused losses in excess of $5000 as Microsoft has had to incur costs to

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF                                28

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1  investigate Defendants' unauthorized access of Microsoft's computers and to repair and

2  implement safety measures to prevent further unauthorized access by Defendants.

3      107.    Under 18 U.S.C. § 1030(g), Microsoft is entitled to compensatory damages and

4  injunctive or other equitable relief.

5  **FIFTH CLAIM FOR RELIEF**

6  (Washington Consumer Protection Act (RCW Ch. 19.86))

7      108.    Microsoft realleges and incorporates by reference each and every allegation set

8  forth in paragraphs 1 through 107 above.

9      109.    Defendants' activities in targeting Microsoft's programs and customers through

10  the spam campaign, misuse of Hotmail accounts and the misuse of Microsoft's JMRP and SNDS

11  constitute an unfair and deceptive acts or practices.

12      110.    As a result of Defendants' conduct, Microsoft has been damages in an amount to

13  be proven at trial.

14      111.    Defendants' acts and omissions affected the public interest, are unfair and

15  deceptive acts or practices in trade or commerce and unfair methods of competition, and violated

16  the Washington Consumer Protection Act, Ch. 19.86.  Microsoft is entitled to treble damages and

17  an award of attorneys fees under this Act.

18      112.    As a direct result of Defendants' actions, Microsoft has suffered and continues to

19  suffer irreparable harm for which Microsoft has no adequate remedy at law, and which will

20  continue unless Defendants' actions are enjoined.

21  **SIXTH CAUSE OF ACTION**

22  (Fraudulent Misrepresentation and Fraudulent Concealment)

23      113.    Microsoft realleges and incorporates by reference each and every allegation set

24  forth in paragraphs 1 through 112 above.

25      114.    Defendants intentionally, willfully and purposefully misrepresented to Microsoft

26  that Defendants' e-mail messages sent to legitimate Hotmail users were not spam e-mail

27  messages.

28      115.    Defendants intentionally, willfully and purposefully misrepresented to Microsoft

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

29

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1  that the level of Defendants' e-mail messages being reported as spam.

2      116.   Defendants intentionally, willfully and purposefully failed to disclose that they

3  had purchased millions of Hotmail e-mail accounts with the purpose of manipulating bulk e-mail

4  and spam reporting statistics to circumvent Microsoft's Hotmail spam filters and to deliver vast

5  quantities of spam e-mail messages to legitimate Hotmail users in contravention of the CAN-

6  SPAM Act and the Washington Commercial Electronic Mail Act.

7      117.   Defendants intentionally, willfully and purposefully failed to disclose that they

8  had manipulated Microsoft's spam reporting statistics for Defendants' e-mail messages by

9  sending vast quantities of spam e-mail messages to unauthorized Hotmail e-mail accounts

10  Defendants had purchased and marking those e-mail messages in "not spam" or "not junk"

11  within the purchased Hotmail e-mail accounts.

12      118.   Defendants intentionally, willfully and purposefully failed to disclose that they

13  had violated Microsoft's Service Agreement, Terms of Use, and Anti-Spam Policy by their

14  conduct alleged herein.

15      119.   At the time Defendants made the aforementioned misrepresentations, Microsoft

16  was ignorant of the falsity of Defendants' representations and believed them to be true.  In

17  reliance on these representations, Microsoft was induced to, among other things, remove the

18  spam blocks on Defendants' spam e-mail messages, consequently allowing legitimate Hotmail

19  users to receive vast quantities of spam e-mail messages.

20      120.   Defendants had a duty to disclose all material facts and abstain from making false

21  misrepresentations.  As a direct and proximate result of Defendants' misrepresentations and

22  concealments as alleged herein, Microsoft was induced to, among other things, remove the spam

23  blocks on Media Network's spam e-mail messages, consequently allowing Hotmail users to

24  receive a vast quantity of spam e-mail messages.

25      121.   Defendants' aforementioned misrepresentations and concealments were

26  intentional misrepresentations and concealment of material facts known to Defendants within the

27  intention of depriving Microsoft of property and legal rights or otherwise causing injury to

28  Microsoft such that an award for exemplary and punitive damages is appropriate under

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

30

1    Washington law.

2    ### SEVENTH CLAIM FOR RELIEF

3    **(Negligent Misrepresentation)**

4    122.    Microsoft realleges and incorporates by reference each and every allegation set

5    forth in paragraphs 1 through 121 above.

6    123.    Defendants made representations to Microsoft that were not true and failed to

7    disclose information that made their representations false.

8    124.    Defendants' representations and omissions were material to Microsoft's decision

9    to unblock Defendants' e-mail messages.  Microsoft would not have unblocked those e-mails if it

10   knew of Defendants' false representations and material omissions.

11   125.    Defendants had no reasonable grounds to believe that their representations were

12   true.

13   126.    Defendants made their false representations with the intent to induce Microsoft to

14   rely on them.

15   127.    Had Microsoft known the falsity of Defendants' representations and the actual

16   facts Defendants had concealed, Microsoft would not have unblocked Media Network's spam e-

17   mail messages or allowed them to continue to participate in the JMRP or SNDS.

18   128.    At the time Defendants made the aforementioned misrepresentations, Microsoft

19   was ignorant of the falsity of Defendants' representations and believed them to be true.  In

20   reliance on these representations, Microsoft was induced to, among other things, remove the

21   spam blocks on Defendants' spam e-mail messages, consequently allowing legitimate Hotmail

22   users to receive a vast quantity of spam e-mail messages.

23   129.    Defendants had a duty to disclose all material facts and abstain from making false

24   misrepresentations.  As a direct and proximate result of Defendants' misrepresentations and

25   concealments as alleged herein, Microsoft was induced to, among other things, remove the spam

26   blocks on Media Network's spam e-mail messages, consequently allowing Hotmail users to

27   receive a vast quantity of spam e-mail messages.

28

COMPLAINT FOR DAMAGES AND            31
EQUITABLE RELIEF

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

## EIGHTH CLAIM FOR RELIEF

### (Trespass to Chattels)

130.    Microsoft realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 129 above.

131.    The computers, computer networks and computer services that constitute Microsoft's Hotmail e-mail system are the personal property of Microsoft.

132.    The computers, computer networks and computer services that constitute Microsoft's Hotmail system are the personal property of Microsoft.

133.    Defendants were aware that their actions were specifically prohibited by Microsoft's Service Agreement, Anti-Spam Policy and Terms of Service and/or were on notice that their actions were not authorized by Microsoft in any way.

134.    Defendants have knowingly, intentionally and without authorization used and intentionally trespassed upon Microsoft's property.

## NINTH CLAIM FOR RELIEF

### (Conversion)

135.    Microsoft realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 134 above.

136.    Defendants have willfully interfered with and converted Microsoft's personal property, without lawful justification, as a result of which Microsoft has been deprived of possession and use of its property.

137.    As a result of Defendants' actions, Microsoft has been damaged in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

### (Breach of Contract)

138.    Microsoft realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 137 above.

139.    Defendants entered into a binding contract with Microsoft by creating one or more Windows Hotmail e-mail accounts and agreeing to abide by Microsoft's Service

1  Agreement, Terms of Use, and Anti-Spam Policy.  Defendants entered into a binding contract

2  with Microsoft by signing up for Microsoft's JMRP and SNDS and agreeing to abide by the

3  terms of the Junk E-Mail Reporting Agreement.  Microsoft fully performed all conditions and

4  promises in accordance with the terms and conditions of its Service Agreement, Terms of Use,

5  Anti-Spam Policy, and Junk E-Mail Reporting Agreement.  Defendants breached Microsoft's

6  Service Agreement, Terms of Use, Anti-Spam Policy, and Junk E-mail Reporting Agreement by,

7  among other things:

8      a.      using technologies, products, services, devices, and components to

9              automatically generate millions unauthorized Hotmail e-mail accounts;

10     b.      using these unauthorized Hotmail e-mail accounts, *inter alia*, to conduct

11             an unlawful spam campaign by transmitting to unsolicited commercial e-

12             mail messages to Hotmail users;

13     c.      using these unauthorized Hotmail e-mail accounts to sanitize Defendants'

14             own spam e-mail messages, thus artificially lowering the recipient-

15             reported complaint level for Defendants' bulk e-mail; and

16     d.      using Microsoft's JMRP and SNDS Feedback to artificially lower the

17             recipient reported complaint level for Defendant's bulk e-mail to

18             circumvent Microsoft's Hotmail spam filters.

19     140.    Defendants entered into a Stipulated Permanent Injunction that enjoined

20  Defendants from, among other things:

21     a.      sending spam e-mail in violation of Washington's Commercial Electronic

22             Mail Act or the federal CAN-SPAM Act;

23     b.      using Microsoft's Hotmail Services – including MSN Internet Access or

24             MSN Hotmail – in violation of or in a manner inconsistent with the MSN

25             Terms of Use;

26     c.      obtaining, compiling, selling, trafficking in, or trading, or directing aiding,

27             or conspiring with others to obtain, compile, sell, traffic in, or trade e-mail

28             addresses for sending or delivery of any unsolicited bulk or unsolicited

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF                          33

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

commercial e-mail in violation of state or federal law;

    d.    opening, creating or accessing, or directing, aiding, facilitating or conspiring with others to open, create, or access any Microsoft's Communication Services accounts, including but not limited to Microsoft's Hotmail e-mail accounts inconsistent with MSN Terms of Use; and

    e.    selling, offering for sale or distributing, or directing, aiding or conspiring with others to sell, offer for sale or distribute any software that allows the user to send unsolicited bulk or unsolicited commercial e-mail to, among others, Microsoft's Hotmail users.

141.    Defendants and Microsoft entered into a binding Settlement Agreement to settle Microsoft's claims asserted in the Lawsuit.  The Settlement Agreement required Defendants to, among other things, abide by the provisions of the Permanent Injunction.  Microsoft fully performed all conditions and promises required on its part to be performed in accordance with the terms and conditions of the Agreement, including executing a Stipulated Judgment and Stipulated Permanent Injunction.  Defendants failed to abide by the provisions of the Permanent Injunction and breached the Settlement Agreement by, among other things:

    a.    knowingly sending, transmitting or advertising in, directing, aiding or conspiring with others to send, transmit, or advertise in, vast quantities of unsolicited commercial e-mail messages to Hotmail users in violation of Washington's Commercial Electronic Mail Act and the CAN-SPAM Act;

    b.    obtaining, compiling, selling, trafficking millions of Hotmail e-mail accounts to send vast quantities of spam e-mail messages to legitimate Microsoft Hotmail users and to subvert Microsoft's JMRP mitigation policies;

    c.    creating millions of Hotmail e-mail accounts to send vast quantities of spam e-mail messages to legitimate Microsoft Hotmail users and to subvert Microsoft's JMRP mitigation policies; and

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

34

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1          d.      selling, offering for sale or distributing, or directing, aiding or conspiring

2                with others to sell software that allows a user to send unsolicited

3                commercial e-mail messages to Microsoft's Hotmail users.

4      142.    As a result of Defendants' actions, Microsoft has been damaged in an amount to

5 be proven at trial.  As a result of Defendants' breaches, Defendants have been unjustly enriched

6 by an amount to be proven at trial.

7 **PRAYER FOR RELIEF**

8      WHEREFORE, Microsoft respectfully requests that the Court enter judgment against

9 Defendants, jointly and severally, as follows:

10     143.    That the Court issue temporary and permanent injunctive relief against

11 Defendants, and that Defendants, their officers, agents, representatives, servants, employees,

12 attorneys, successors and assignees, and all others in active concert or participation with

13 Defendants, be enjoined and restrained from:

14          a.      using Microsoft's Hotmail Services;

15          b.      using Microsoft's JMRP and SNDS;

16          c.      publishing any content on WL Spaces pages using existing Windows Live

17                ID accounts;

18          d.      using Microsoft's computers and computer systems in connection with

19                sending or monetizing commercial e-mail messages;

20          e.      making unauthorized use of Microsoft's computers and computer systems;

21          f.      continuing to violate Microsoft's Terms of Use;

22          g.      continuing to violate the federal CAN-SPAM Act, the Washington

23                Commercial Electronic Mail Act, the Washington Consumer Protection

24                Act; the Digital Millennium Copyright Act, and the Computer Fraud and

25                Abuse Act;

26          h.      assisting, aiding, or abetting any other person or business entity in

27                engaging in or performing any of the activities referred to in

28                subparagraphs a) through g) above.

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

35

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

144. That the Court award Microsoft:

    a.     compensatory damages subject to proof at trial;

    b.     Defendants' profits pursuant to Settlement Agreement;

    c.     liquidated damages pursuant to the Settlement Agreement and Judgment;

    d.     damages as measured by the amount Defendants' were unjustly enriched by their breach of Microsoft's Service Agreement, Terms of Use, Anti-Spam Policy, and the JMRP Agreement;

    e.     statutory damages and special damages;

    f.     punitive damages;

    g.     attorneys' fee, costs and expenses pursuant to 15 U.S.C. § 7706(g)(4) and pursuant to the Settlement Agreement and Judgment; and

    h.     for such other relief as the Court deems proper in an amount to be proven at trial.

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF

36

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1

## DEMAND FOR JURY TRIAL

2

Plaintiff Microsoft herby demands a trial by jury in this action.

3

4
Dated: June 10, 2010.                    ORRICK, HERRINGTON & SUTCLIFFE LLP

5

6
                                         By: *s/ Mark S. Parris*
7
                                             Mark S. Parris (WSBA #13870)
                                             mparris@orrick.com
8                                            Jeffery L. Cox (WSBA #37534)
                                             jcox@orrick.com
9
                                             701 5th Avenue
10                                           Suite 5600
                                             Seattle, Washington 98104-7097
11                                           Telephone: +1-206-830-4300
                                             Facsimile: +1-206-839-4301
12
                                             Of counsel:
13
                                             I. Neel Chatterjee (CA Bar No. 173985)
14                                           nchatterjee@orrick.com
                                             Gabriel M. Ramsey (CA Bar No. 209218)
15                                           gramsey@orrick.com
                                             Jacob M. Heath (CA Bar No. 238959)
16                                           jheath@orrick.com
                                             1000 Marsh Road
17                                           Menlo Park, California 94025
                                             Telephone:  +1-650-614-7400
18                                           Facsimile:  +1-650-614-7401

19                                           Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND               37
EQUITABLE RELIEF